FRONTIER INSURANCE COMPANY, as Subrogee of MARIETA G. ANGTUACO, Respondent, v STATE OF NEW YORK, Appellant.

Third Department, November 27, 1991

14

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Jerry Boone* of counsel), for appellant.

*Nixon, Hargrave, Devans & Doyle (William S. Brandt* of counsel), for respondent.

**OPINION OF THE COURT**

MIKOLL, J.

Marieta G. Angtuaco was employed as an assistant professor in the department of gynecology-obstetrics at the School of Medicine of the State University of New York at Buffalo (hereinafter SUNY Buffalo). Children's Hospital of Buffalo was an affiliated teaching hospital of SUNY Buffalo and Angtuaco taught surgery to residents in the SUNY Buffalo graduate medical program who worked at Children's Hospital. In September 1982, Angtuaco performed a postpartum tubal ligation on Mary Huffman at Children's Hospital assisted by two resident doctors. It has been stipulated that Angtuaco participated in the Huffman surgery to teach the two resident doctors and that she was fulfilling her teaching responsibilities at the time.

In May 1985, as a result of injuries allegedly suffered due to the surgery, Huffman instituted a medical malpractice action against Angtuaco. Subsequently claimant, Angtuaco's medical malpractice carrier, sought to have the Attorney-General provide a defense to the malpractice action based on Public Officers Law § 17. The Attorney-General refused claiming that the provision cited did not require the State to provide representation in the action because Angtuaco was paid a fee for the Huffman surgery through her departmental practice plan. Eventually, claimant defended Angtuaco and commenced this action seeking reimbursement for the cost of the defense from the State after the Huffman action was settled.

The Court of Claims, after trial, ruled in favor of claimant finding that Angtuaco was acting within the scope of her State employment at the time she performed the Huffman surgery and thus was entitled to be defended by the State in the Huffman action. The court awarded claimant $1,984.78 as the cost of the defense provided plus interest thereon from March 1, 1988. This appeal ensued.

■ ■ In our view the Court of Claims properly found that Angtuaco was entitled to be defended by the State in the Huffman malpractice action and its judgment should therefore be affirmed. Initially, we note that claimant's contention, that the State's arguments relating to the construction and interpretation of the language of the insurance policy are not reviewable in this court because they were not raised before the Court of Claims, is well taken (see, Gunzburg v Gunzburg, 152 AD2d 537, 538). The Court of Claims' finding that the trial was limited to issues regarding the scope of Angtuaco's employment is supported by the record. Nor do we find that this is an appropriate case for the exercise of this court's discretion to address the merits of the State's insurance arguments in the interest of justice.

■ We reject the State's primary argument before the Court of Claims that because Angtuaco charged Huffman a fee for the surgery, the services rendered were part of her private practice and therefore outside the scope of her State employment. Adoption of the State's argument would be adverse to the State's policies. The parties stipulated that part of Angtuaco's compensation as a professor at SUNY Buffalo was from fees derived through the departmental practice plan. This fee arrangement supplemented the relatively low salaries paid by SUNY Buffalo and induced qualified doctors to accept

teaching positions at the institution. An essential element in the instruction of resident doctors in training is their involvement in the care of actual patients, and SUNY Buffalo, which has no clinical facilities in which to teach its residents, entered into affiliation agreements with local hospitals to provide those clinical facilities. Adoption of the position urged by the State, however, would deprive Angtuaco and others of the benefit of Public Officers Law § 17 and tend to frustrate the State's objective of attracting qualified doctors to teach at SUNY Buffalo and other State medical schools, a result inimical to the State's public policy. Moreover, the position urged by the State would improperly deny a teaching doctor the benefit of Public Officers Law § 17 merely on the basis of the source of compensation although that compensation was earned in furtherance of the employee-teacher's State employment.

We also reject the State's claim that claimant failed to prove that the alleged malpractice involved the teaching component of Angtuaco's employment and that "[t]herefore, there [was] no basis for concluding that Dr. Angtuaco's services were rendered to Ms. Huffman 'on behalf of the State University of New York' ". This fact was proven by the parties' stipulation, previously noted, that Angtuaco was fulfilling her teaching responsibilities at the time.

We also find no merit in the State's argument that claimant lacked standing to maintain this action because Public Officers Law § 17 (5) limits its benefits to State employees insofar as subdivision (7) of that statute provides that "[t]he provisions of this section shall not be construed to impair, alter, limit or modify the rights and obligations of any insurer under any policy of insurance".

MAHONEY, P. J., CASEY, MERCURE and CREW III, JJ., concur.

Ordered that the judgment is affirmed, without costs.