[610 NYS2d 647]

FRONTIER INSURANCE COMPANY, as Subrogee of THOMAS SCALEA, Respondent, v STATE OF NEW YORK, Appellant. (And Another Related Claim.)

Third Department, April 14, 1994

## APPEARANCES OF COUNSEL

*Sedgwick, Detert, Moran & Arnold,* New York City *(Jeffrey M. Winn* of counsel), for appellant.

*Nixon, Hargrave, Devans & Doyle,* Rochester *(William S. Brandt* of counsel), for respondent.

## OPINION OF THE COURT

CREW III, J.

Thomas Scalea and William Mann are physicians who were employed as full-time professors of medicine by State University of New York (hereinafter SUNY) medical schools and were members of the clinical practice plans at the hospitals at which they taught. Each doctor was the subject of a medical malpractice suit brought by a patient treated at a SUNY

health center, for which they sought a defense by the Attorney-General pursuant to the provisions of Public Officers Law § 17, and in each case the Attorney-General refused to defend. Claimant had issued policies of insurance to the physicians which required claimant to, *inter alia,* defend and indemnify the physicians in cases where the State refused to do so. Pursuant to the policies, claimant reserved the right to recover from the State any sums expended in that regard. Claimant undertook defense of the malpractice actions, settled each and commenced these claims seeking indemnification from the State, pursuant to Public Officers Law § 17 (2) (a) and (3) (a), on the ground that the physicians were acting within the scope of their employment at the time of the alleged malpractice.

Following joinder of issue, the State moved for summary judgment. Claimant opposed the motion and cross-moved to strike certain of the State's affirmative defenses. The Court of Claims denied the State's motion and granted claimant's cross motion. The State has appealed and has asserted myriad reasons for reversal, which we will address seriatim.

■ The State first contends that the physicians were required to commence a CPLR article 78 proceeding to challenge the Attorney-General's determinations and that their failure to do so renders the instant claims time barred pursuant to CPLR 217. With regard to the rights conferred upon the physicians pursuant to Public Officers Law § 17 (2) (a), we agree with the State's contention and hold that claimant is not entitled to indemnification for moneys expended in defense of the malpractice actions.

It is now well established that "[i]n order to determine the Statute of Limitations applicable to a particular * * * action, the court must 'examine the substance of that action to identify the relationship out of which the claim arises and the relief sought' * * *. If the court determines that the underlying dispute can be or could have been resolved through a form of action or proceeding for which a specific limitation period is statutorily provided, that limitation period governs" *(Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 202, quoting *Solnick v Whalen,* 49 NY2d 224, 229). Public Officers Law § 17 (2) (a) provides that upon delivery to the Attorney-General of a copy of a summons and complaint in an action or proceeding alleging an act or omission which occurred while the employee was acting within the scope of his or her public

employment, the State shall provide for the defense of that employee.

Here, the Attorney-General declined to afford such defenses and his determinations were "much like that of an insurer reviewing a complaint to determine if a defense must be provided" *(Matter of Spitz v Abrams,* 123 Misc 2d 446, 450, *affd* 105 AD2d 904; *see, Matter of Garcia v Abrams,* 98 AD2d 871). There can be no doubt that the Attorney-General is an "officer" as defined in CPLR article 78 and that claimant seeks relief on the ground that the Attorney-General failed to perform a duty enjoined upon him by law *(see,* CPLR 7802 [a]; 7803 [1]). Accordingly, at the time the Attorney-General declined to defend the physicians, his determinations became final and binding, thereby invoking the provisions of CPLR 217, and the physicians were obliged to commence a CPLR article 78 proceeding within four months to compel him to provide such a defense. Contrary to claimant's assertion, Public Officers Law § 17 (2) (a), unlike Public Officers Law § 17 (3) (a), does not require the State to indemnify its employees for the cost of a defense. Rather, it requires the Attorney-General to provide such a defense and his improper failure to do so is subject to CPLR article 78 review *(see, Matter of Munabi v Abrams,* 199 AD2d 1037; *Matter of Spitz v Abrams,* 105 AD2d 904, *supra).*

We are, however, of a contrary view with regard to the rights conferred upon employees pursuant to Public Officers Law § 17 (3) (a). That section has been construed as "creating a cause of action on behalf of State employees against the State for indemnification" *(Ott v Barash,* 109 AD2d 254, 257; *see, De Vivo v Grosjean,* 48 AD2d 158, 160). It is abundantly clear that the Court of Claims has jurisdiction to hear actions for indemnification *(see,* Court of Claims Act § 9 [2], [4]; *cf., County of Broome v State of New York,* 119 AD2d 358) and that a claim therefore accrues on the date when final payment is made by the party seeking to be indemnified *(see, Bay Ridge Air Rights v State of New York,* 44 NY2d 49, 54). Accordingly, the Court of Claims has jurisdiction of the claims for indemnification for moneys expended in settlement of the malpractice actions and they have been timely instituted.

The State next contends that claimant's claims are barred by reason of the provisions of Public Officers Law § 17 (11). In 1992, the Legislature amended Public Officers Law § 17 by adding subdivision (11), which provides that physicians

at SUNY medical schools engaged in the clinical practice of medicine are not entitled to the benefits afforded by Public Officers Law § 17 (see, Public Officers Law § 17 [11], as added by L 1992, ch 499, § 16). The amendment was expressly made retroactive to July 1, 1991 (see, L 1992, ch 499, § 18). The question to be resolved here is what event invokes the preclusion of Public Officers Law § 17 benefits: the date of a physician's wrongful act or omission, the date of a suit commenced as the result of an alleged wrongful act or omission, or the date a claim is made for indemnification?

Here, the alleged wrongful acts and the suits predicated thereon antedated the effective date of the amendment while claimant's claims were filed after that date. Our reading of the amendment satisfies us that the operative dates or events are the malpractice actions commenced by the patients against the physicians and, thus, Public Officers Law § 17 (11) does not bar recovery. The pertinent portion of the amendment reads that on and after July 1, 1991, "[t]he provisions of [Public Officers Law § 17] shall not apply to [SUNY] physicians * * * *regarding any civil action or proceeding alleging some professional malpractice* in any state or federal court arising out of the physician's involvement in clinical practice" (Public Officers Law § 17 [11] [emphasis supplied]). That language makes clear that the operative event for the purposes of retroactivity is a civil action or proceeding alleging malpractice. The instant claims do not allege malpractice but, rather, entitlement to indemnification. Nevertheless, if, as the State contends, the right to indemnification is the event which invokes application of Public Officers Law § 17 (11), claimant would still prevail. Although a cause of action to indemnify an employee does not accrue until the date of judgment or settlement of the underlying action (see, *Bay Ridge Air Rights v State of New York, supra*), the protection of the statute, i.e., the right to indemnification, is earned at the time of the wrongful act or omission (cf., *Frontier Ins. Co. v State of New York*, 172 AD2d 13; see also, General Construction Law § 93).

▮ Next the State argues that the provisions of Public Officers Law § 17 (7) bar claimant's claims. That provision provides that the provisions of Public Officers Law § 17 "shall not be construed to impair, alter, limit or modify the rights and obligations of any insurer under any policy of insurance" (Public Officers Law § 17 [7]). According to the State, subdivision (7) was intended to preserve all available commercial insurance coverage and, further, that the obligation of the

State would be to indemnify an employee to the extent that his or her insurance coverage was inadequate to the purpose. To the extent that an insurance carrier, without exception or reservation, insures an employee for acts which would otherwise be covered under Public Officers Law § 17, we agree with the State's contention. However, the State seemingly overlooks the fact that claimant issued the policies in question at a reduced premium in consideration for which it did not purport to insure the physicians for acts for which they were entitled to defense and indemnification pursuant to Public Officers Law § 17. Claimant did, however, agree to defend and indemnify the physicians in the event of a dispute as to their entitlement to Public Officers Law § 17 benefits, and it reserved the right to recover from the State any sums expended in that regard in the event that it was determined that its insureds were entitled those benefits. In essence, if the physicians were entitled to Public Officers Law § 17 protection, their insurance did not cover such a loss.

The State counters that the insurance written by claimant, as described, is illusory because the physicians are required to treat all of their private fee-paying patients at SUNY facilities and that the policies, therefore, cover nothing. That argument is wholly unavailing. The policies, in addition to providing a defense and indemnification where the Attorney-General declines to do so, cover those instances where a private patient is treated only by the insured physician or by that physician and nonstudents as part of the physician's separate private practice, in which case the State would not be obligated to provide the statutory protection *(see, Frontier Ins. Co. v State of New York,* 146 Misc 2d 237, 248, *affd* 172 AD2d 13, *supra).* Accordingly, inasmuch as the policies in question do, in fact, insure against potential liability not encompassed by the provisions of Public Officers Law § 17, we reject the State's contention that "it should be insulated from any liability * * * by the doctrine of superior equities" *(Federal Ins. Co. v Andersen & Co.,* 75 NY2d 366, 375).

■ We find the State's contention that the physicians waived their rights to the benefits of Public Officers Law § 17 equally unavailing. It is axiomatic that "[a] waiver is 'the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it' " *(Werking v Amity Estates,* 2 NY2d 43, 52, *appeal dismissed and cert denied* 353 US 933, quoting Whitney, Contracts, at 273 [4th ed]; *see, United Commodities-Greece v Fidelity Intl.*

*Bank,* 64 NY2d 449, 457). The State argues that the SUNY physicians' labor union, United University Professions (hereinafter UUP), and the State have had a "long standing" agreement that Public Officers Law § 17 was not to apply to the treatment of practice plan patients. As evidence of that assertion, the State refers us to the 1991-1995 collective bargaining agreement between the State and UUP, which provides, in pertinent part, that: "The State shall prepare, secure introduction and recommend passage of legislation to amend Section 17 of the Public Officers' *[sic]* Law to reflect the long standing agreement of the parties that the physicians * * * shall be responsible for their own malpractice insurance."

Although that provision indicates a long-standing agreement that physicians were to secure their own malpractice insurance, it does not express any agreement that the physicians waived their statutory rights under the Public Officers Law. The agreement continues: "It is the express[] understanding of the parties that Section 17 of the Public Officers' *[sic]* Law does not cover any malpractice claims that arise from the conduct of or participation in the clinical practice plan."

Notably, this provision neither states that the "expressed understanding" was part of a "long standing" agreement between the parties nor that it was intended to be applied retroactively. It is of note that no references to Public Officers Law § 17 are to be found in the collective bargaining agreements until the 1991-1995 agreement. Finally, the fact that UUP and the State have agreed, since 1974, that the cost of the physicians' professional liability was to be defrayed through the purchase of malpractice liability insurance is not indicative of a waiver of the physicians' rights under Public Officers Law § 17. As pointed out earlier, the physicians are subject to liability claims not encompassed by the protection afforded by Public Officers Law § 17 and are thereby in need of malpractice insurance to that extent, and the aforesaid agreement can refer as readily to the physicians' obligation to defer the expense of such personal coverage as to a waiver of their rights to Public Officers Law § 17 benefits. Although review of the prior collective bargaining agreements does not, in our view, exhibit a waiver, express or implied, of the physicians' protection under Public Officers Law § 17, they clearly reflect disagreement as to who should be responsible for the cost of malpractice insurance.

We have considered the State's other arguments and find them unpersuasive.

MIKOLL, J. P., MERCURE, WHITE and YESAWICH JR., JJ., concur.

Ordered that the orders are affirmed, without costs.