**Ronald L. DURKIN, Trustee of the
Benchmark Irrevocable Trust,
Plaintiff,**

v.

**Patricia A. SHEA, as Executrix of the
Estate of William A. Shea, et al.,
Defendants.**

No. 95 Civ. 1932(CSH).

United States District Court,
S.D. New York.

March 6, 1997.

Lawrence Kill, Anderson Kill Olick & Osh-insky, New York City, for plaintiff.

Christopher Lometti, Teresa P. Durham, Law Office of Christopher Lometti, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Defendants have moved to dismiss plaintiff's first amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and with respect to certain defendants, for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In the alternative, defendants request a stay of these proceedings until related litigation in the Southern District of California is completed. Plaintiff opposes both applications. For the reasons stated below, defendants' motion to dismiss is denied, with the exception of plaintiff's claim for malpractice stemming from Shea & Gould's alleged failure to file a timely claim in the Drexel Burnham Lambert bankruptcy ("the Drexel claim"). Defendants' motion to dismiss this Drexel claim is granted, without prejudice to a later motion by plaintiff to amend his complaint. However, any motion to amend by plaintiff and all further litigation in this matter are stayed pending the resolution of the related litigation in the Southern District of California.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *see Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 124 (2d Cir.1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

■ Except in certain circumstances, consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. *See Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). A district court must accept plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986), and the allegations must be "construed favorably to the plaintiff." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991).

## BACKGROUND

■ The following facts are derived from plaintiff's first amended complaint, taken to be true on this motion. In addition, the Court will take judicial notice of various documents filed in the related litigation in California.[1] *See Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993) (matters of which judicial notice may be taken can be considered when reviewing a Rule 12(b)(6) motion); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773–774 (2d Cir.1991) (noting that courts routinely take judicial notice of documents filed in other courts).

**Round One: The ICA Shareholder Litigation**

In 1986, the Directors and Officers of Imperial Corporation of America (ICA) purchased, sold, and issued junk bonds and other high-risk debt in cooperation with Drexel Burnham Lambert and Michael Milken. When the market for such financial instruments declined rapidly, ICA suffered millions of dollars in losses. As a result, in 1989 several ICA shareholders initiated both derivative and class actions lawsuits against certain ICA Directors and Officers, Drexel

---

**1.** Accordingly, defendants' requests for judicial notice are granted. *See* Fed.R.Evid. 201.

and Milken in the United States District Court for the Southern District of California. The law firm of Baker & McKenzie was retained as lead litigation counsel for ICA, and Shea & Gould was hired to assist. Sheldon Camhy and Kurt Hunciker were the Shea & Gould partners primarily responsible for assisting as counsel to ICA in connection with the shareholder lawsuits.

Settlement proposals were exchanged throughout mid-to-late 1989. By 1990, the parties had reached a settlement in which ICA released its claims against certain ICA directors and Officers, Drexel, and Milken in exchange for, *inter alia*, a cash settlement of approximately $13,000,000.00 ("the ICA settlement"). On February 22, 1990, a Magistrate Judge held a fairness hearing on the proposed settlement. At the conclusion of that hearing, the Magistrate Judge signed an order approving the settlement and dismissing the shareholder actions with prejudice.

That same day, the Office of Thrift Supervision seized ICA's largest subsidiary, Imperial Savings Association, and placed it into conservatorship under the auspices of the Resolution Trust Corporation. On February 28, 1990, ICA itself filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of California. Shea & Gould, acting through Camhy and Hunciker, was hired to serve as special corporate and litigation counsel to ICA in its bankruptcy. Around the same time, Drexel also filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Southern District of New York.

Pursuant to ICA's bankruptcy reorganization plan, its assets were transferred to a liquidating trust called the Benchmark Irrevocable Trust. In January 1991, Ronald L. Durkin, the plaintiff in this case, was appointed as trustee for the trust. After reviewing records from the ICA settlement, Durkin concluded that the parties involved in the settlement had released valuable derivative claims for insufficient consideration.

### Round Two: Durkin Sues the ICA Settlement Participants

On February 21, 1992, plaintiff filed a complaint in United States District Court for the Southern District of California alleging claims against the shareholder plaintiffs, their lawyers, and certain ICA directors and officers for, *inter alia*, breach of fiduciary duty and legal malpractice stemming from the ICA settlement. On the same day, plaintiff entered into a tolling agreement with Shea & Gould and Camhy, in which the statute of limitations on any claim arising out of their representation of ICA was tolled indefinitely. On October 9, 1992, plaintiff filed his first amended complaint in the California action, adding Shea & Gould and Camhy as defendants. The first amended complaint alleged that Camhy and the partnership had committed malpractice by negligently advising ICA to enter into the ICA settlement.

Around the same time, Durkin discovered that no claim had been filed against the Drexel Bankruptcy Estate on ICA's behalf prior to the bar date of November 15, 1990. Although he sought permission to file a late claim from the Bankruptcy Court, that request was denied on April 28, 1994. In the same month, Shea & Gould entered dissolution and became insolvent. As a result, plaintiff filed a third amended complaint in the California action on October 10, 1994, adding the former partners of Shea & Gould as individual defendants and alleging that they were vicariously liable for Camhy's and Hunciker's malpractice.[2] Plaintiff also included an additional malpractice claim against Shea & Gould and the former partners based on Camhy's and Hunciker's allegedly negligent failure to advise ICA to file a timely proof of claim in the Drexel bankruptcy ("the Drexel claim").

On November 7, 1994, the former partners of Shea & Gould, with the exception of Camhy, moved to dismiss the California complaint against them on two grounds: 1) that plaintiff's claims were time-barred; and, 2) that the Court lacked personal jurisdiction over certain of the former defendants who were not involved in the ICA litigation and had insufficient contacts with California. In an opinion filed January 12, 1995, Judge Gonzalez granted the former partners' motion to

2. Hunciker was also joined as a defendant by the third amended complaint.

dismiss for lack of personal jurisdiction. *Durkin v. Shields*, No. 92–1003, at 15 (S.D.Cal. Jan. 12, 1995). However, since Hunciker and another former partner named Robert Ruben were both subject to personal jurisdiction in California, the Court continued to consider whether plaintiff's malpractice claims were time-barred against these defendants.

As a threshold matter, Judge Gonzalez concluded that California's one-year statute of limitations for attorney malpractice claims applied to plaintiff's malpractice claims against the former partners. *Durkin*, January 12, 1995 opinion at 11. Since plaintiff's Drexel claim did not accrue under California law until the Bankruptcy Court denied his request to file a late claim on April 28, 1994, and this claim was added to plaintiff's complaint just six months later, the Court held that plaintiff's Drexel claim was not time-barred. *Id.* However, the Court also held that plaintiff's ICA settlement malpractice claims against the former partners were time-barred, since they did not relate back to the filing of plaintiff's original complaint and had accrued over one year prior to the joinder of the former partners as individual defendants.[3] *Id.* at 12–14.

**Round Three: The Instant Action**

In March 1995, plaintiff essentially refiled his California complaint in this Court, naming as defendants the former Shea & Gould partners who were dismissed from the California action for lack of personal jurisdiction. Plaintiff's first amended complaint alleges that the defendants herein are vicariously liable for the legal malpractice, breach of contract, and breach of fiduciary duty committed by Camhy and Hunciker during the course of their representation of ICA. The

facts alleged to support this claim are substantially the same facts that were alleged in the California complaint. Accordingly, plaintiff's malpractice claims against the defendants stem from two separate factual scenarios: first, Shea & Gould's allegedly negligent advice to ICA regarding the ICA settlement; and second, Shea & Gould's alleged failure to advise ICA to file a timely proof of claim in the Drexel bankruptcy.

Defendants have now moved to dismiss this complaint on the grounds of collateral estoppel, statute of limitations, and for certain defendants, lack of personal jurisdiction in this district. In the alternative, defendants request a stay of these proceedings until the related litigation in California is completed. Plaintiff opposes both applications.

## DISCUSSION

### I. Personal Jurisdiction over the D.C. & Florida Partners

█ The former partners from the Washington D.C. and Florida offices of Shea & Gould move to dismiss plaintiff's claim on the ground that this Court does not have personal jurisdiction over them pursuant to New York's long-arm statute, N.Y. Civ. Prac. L. & R. § 302.[4] The plaintiff disagrees with this conclusion, arguing that personal jurisdiction over the D.C. and Florida partners can be established vicariously through Camhy's and Hunciker's activities in New York on behalf of ICA. I agree with the plaintiff and conclude that this Court has personal jurisdiction over the D.C. and Florida partners.

█ Prior to discovery and an evidentiary hearing, a plaintiff may defeat a jurisdiction-testing motion by asserting legally

---

**3.** In a subsequent opinion filed on February 10, 1995, Judge Gonzalez made the following clarification of the January 12 opinion:

[T]he Court clarifies that insofar as its order filed January 12, 1995 dismissed claims against certain former partners over whom the Court found no personal jurisdiction.... Assuming plaintiff were to establish personal jurisdiction over those defendants in this forum, the Court would find that the claims as described by that order are time-barred under the applicable statute of limitations in this jurisdiction.

*Durkin v. Shields*, No. 92–1003, at 2–3 (S.D.Cal. Feb. 10, 1995).

**4.** The former partners who move to dismiss on this ground are: William J. Conti, Mario V. Mirabelli, Howard A. Parelskin, P.A., Allen K. Halperin, Frank C. Razzano, Mark J. Riedy, Robert F. Greene, Morton T. Brown, P.A, S. James Cohen, P.A., Marshall J. Emas, P.A., Mark L. Friedman, P.A., Michael D. Friedman, P.A., H. Jack Klingensmith, P.A., Richard B. Ivans, P.A., Allen P. Reed, P.A., J. Schwartz, P.A.

sufficient allegations of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). This prima facie case may be established through the plaintiff's pleadings and affidavits. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986); *Walsh v. Maryland Bank, N.A.*, 806 F.Supp. 437, 440 (S.D.N.Y.1992). All jurisdictional allegations should be construed in the light most favorable to plaintiff, with all doubts resolved in his favor. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994); *CutCo Indus., Inc.*, 806 F.2d at 365; *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

■ In a diversity action, personal jurisdiction over a defendant is determined by the law of the forum in which the court sits, in this case, New York. *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir.1983); *Walsh*, 806 F.Supp. at 440. Plaintiff alleges personal jurisdiction over the D.C. and Florida partners pursuant to New York's long-arm statute, CPLR § 302(a)(1).[5] This statute gives a court personal jurisdiction over a non-resident if two conditions are met: "first, the nondomiciliary must transact business within the state; second, the claim against the nondomiciliary must arise out of that business activity." *CutCo Indus., Inc.*, 806 F.2d at 365.

■ A nondomiciliary "transacts business" in New York if he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Id.* (citations and internal quotations omitted). It is undisputed that the D.C. and Florida partners have not themselves transacted business in New York as that term has been defined by the New York courts. However, plaintiff argues that the business activity of the former New York partners can be attributed to the D.C. and Florida partners pursuant to principles of agency law. Defendant contests this assertion, arguing that personal jurisdiction cannot be established vicariously.

In *CutCo Industries, Inc.*, 806 F.2d at 366, the Second Circuit held that long-arm jurisdiction can be established over a non-resident principal through an agent if that agent "acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal." Although the principal must have some control over the agent to satisfy jurisdictional requirements, "joint participation in a partnership ... establishes control sufficient to make each partner ... an agent of the others." *Id.* Since it is undisputed that all of the former partners were joint participants in the Shea & Gould partnership, and that the former New York partners transacted business in New York for the benefit of the partnership, I conclude that the D.C. and Florida partners transacted business in New York through their agents, the New York partners. *Cf. Schur v. Porter*, 712 F.Supp. 1140, 1146 (S.D.N.Y.1989) (holding that attorney's contacts with New York are attributable to his Washington, D.C. law firm for purposes of jurisdiction over the firm on malpractice claim).

Defendants object to this conclusion, citing the Ninth Circuit's opinion in *Sher v. Johnson*, 911 F.2d 1357, 1365–66 (9th Cir.1990). In that case, the Ninth Circuit was confronted with a malpractice claim by a California resident against a Florida law firm and its individual partners, who had been hired by the plaintiff to represent him in a Florida criminal proceeding. *Id.* at 1360. The Court held that personal jurisdiction over each partner had to be established individually, regardless of their joint liability for malpractice. *Id.* at 1365.

■ In reaching this decision, the Ninth Circuit concluded that a partner is not ordinarily an agent of his partners, even though he is an agent of the partnership. *Id.* at 1366. However, under New York law, a partner is, in fact, an agent of his fellow partners, as well as of the partnership. *First National Bank of Ann Arbor, Michigan v. Farson*, 226 N.Y. 218, 221–22, 123 N.E. 490 (1919) ("Each partner acts, as to himself, as a

---

**5.** CPLR § 302(a)(1) states in pertinent part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent: 1) transacts any business within the state...."

principal ... and, as to each other partner, as a general agent.") *Caplan v. Caplan*, 268 N.Y. 445, 450, 198 N.E. 23 (1935) (same); *Friedson v. Lesnick*, 1992 WL 51543, *2 (S.D.N.Y.1992) ("Under New York law, each general partner acts as the agent of every other general partner and of the partnership.").

Defendants point out that such cases refer to principles of liability, rather than jurisdiction.[6] However, although "liability and jurisdiction are independent," *Sher*, 911 F.2d at 1365, general principles of agency law can appropriately inform the jurisdictional inquiry. In fact, even the Ninth Circuit based its decision in *Sher* on general principles of partnership law. Accordingly, I conclude that the New York Court of Appeals would not adopt the *Sher* rule, and that the activities of the former New York partners can be attributed to the D.C. and Florida partners for jurisdictional purposes.

▆▆▆▆ Alternatively, defendants argue that plaintiff's claim did not arise out of any business transacted in New York. Under New York law, a claim arises out of business transacted in New York if there is "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981); *see also Beacon Enters., Inc.*, 715 F.2d at 764 (holding that CPLR 302(a)(1) requires a "substantial relationship" between the cause of action and the in-state conduct). In essence, plaintiff must show "that the cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York." *Hoffritz for Cutlery, Inc.*, 763 F.2d at 59.

▆▆▆▆ In support of their argument that plaintiff's claim does not arise out of any

business transacted in New York, defendants point to the allegations of the complaint, which focus exclusively on Camhy's and Hunciker's activities in California on behalf of ICA. However, a court does not lack personal jurisdiction over a defendant merely because the acts alleged in the complaint did not take place in New York. *Hoffritz for Cutlery, Inc.*, 763 F.2d at 59. In addition, plaintiff has submitted an affidavit which contains several allegations of New York activity related to Camhy's and Hunciker's representation of ICA.

According to this affidavit and its exhibits, both Camhy and Hunciker were partners in Shea & Gould's New York Office. Cooper Aff., Ex. J. Camhy initially met with the Chairman of ICA's Board of Directors in New York City to discuss the shareholder litigation. Cooper Aff., Ex. M. After Camhy was retained as counsel for ICA, he initiated and received phone calls and correspondence at Shea & Gould's New York office concerning his representation of ICA and the settlement of the shareholder litigation. Cooper Aff., Exs. M, O. Camhy also opened a "new matter" file with Shea & Gould's accounting department in New York, and ICA's bills were generated out of the New York office. Cooper Aff., Exs. M, Q. In July 1989, Camhy attended a special meeting of the ICA Board of Directors in New York. Cooper Aff., Ex. R. In addition, Camhy also participated in several meetings of ICA's Special Litigation Committee and Board of Directors by telephone from New York, Cooper Aff., Exs. P, T, W. At one such meeting, Camhy received authorization from the Committee to proceed with settlement negotiations in the shareholder litigation. Cooper Aff., Exs. P.

Taking these allegations as true and viewing them in the light most favorable to plaintiff, I conclude that plaintiff has shown a "substantial nexus" between Camhy's and

**6.** Defendants also rely on *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), for the proposition that personal jurisdiction cannot be established over an individual based on the contacts of a third party with the forum state. However, neither of these cases addressed the partnership relationship at issue

here. *See Rush*, 444 U.S. at 327–330, 100 S.Ct. at 576–578 (business activity of insurer in forum state does not lead to personal jurisdiction over insured); *Helicopteros*, 466 U.S. at 416–417, 104 S.Ct. at 1872–1874 (with respect to establishing general jurisdiction over defendant vendor, vendee's contacts with forum state cannot be attributed to vendor).

Hunciker's activities in New York and his claims. *Cf. Hoffritz Cutlery, Inc.,* 763 F.2d at 59–60. Accordingly, plaintiff has established a prima facie case of long-arm jurisdiction over the D.C. and Florida partners under CPLR § 302(a)(1). The D.C. and Florida partners' motion to dismiss on this basis is denied.

## II. Collateral Estoppel

### A. ICA Settlement Malpractice Claim

■ Defendants argue that plaintiff's ICA settlement malpractice claim is barred by collateral estoppel since the District Court in California dismissed identical claims against Hunciker and Ruben as time-barred. Plaintiff contests this conclusion, arguing that the standard governing the issue for decision in this Court is significantly different from the standard that governed the issue determined by the District Court in California. I agree with plaintiff's analysis, and conclude that collateral estoppel does not bar plaintiff from asserting his ICA settlement malpractice claim against the defendants in this Court.

■ "Collateral estoppel ... has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *see also Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (holding that collateral estoppel can be used "defensively" by a defendant to bar a plaintiff from relitigating an issue previously lost against another defendant). However, as the above quoted language suggests, "[t]he issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *see also In re PCH Assocs.,* 949 F.2d 585, 593 (2d Cir.1991). "[I]ssues are not identical when the standards governing them are significantly different." *Cullen v. Margiotta,* 811 F.2d 698, 732 (2d Cir.), *cert. denied,* 483 U.S.

1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *see also Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729, 734 (2d Cir. 1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992); *Barnell v. Paine Webber Jackson & Curtis, Inc.,* 614 F.Supp. 373, 377 (S.D.N.Y.1985) (collateral estoppel not appropriate where a different judicial principle governed the prior proceeding).

It is undisputed that the issue decided by the California District Court was whether plaintiff's malpractice claims against Hunciker and Ruben were time-barred under California law, specifically California's one-year statute of limitations for attorney malpractice claims. *See Durkin,* No. 92–1003 at 10–14. Thus, for plaintiff to be collaterally estopped from asserting the same malpractice claim in this Court, the issue for decision by this Court must be whether plaintiff's malpractice claim against the former partners is time-barred under California law. Plaintiff argues that the issue presented here is significantly different, since this Court must look to New York law to determine what statute of limitations to apply to plaintiff's state law claim for legal malpractice.

■ It is well-settled that a federal court sitting in diversity must look to the law of its forum state, in this case New York, to determine which state's statute of limitations to apply. *Sun Oil Co. v. Wortman,* 486 U.S. 717, 722–729, 108 S.Ct. 2117, 2121–2125, 100 L.Ed.2d 743 (1988); *Overall v. Estate of Klotz,* 52 F.3d 398, 402 (2d Cir.1995); *Stafford v. International Harvester Co.,* 668 F.2d 142, 147 (2d Cir.1981). In this case, New York's "borrowing statute" applies, which states in pertinent part that:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued. . . .

N.Y. Civ. Prac. L. & R § 202. Accordingly, pursuant to this statute, this Court must apply the statute of limitations of New York

or California, whichever is shorter. *Overall,* 52 F.3d at 402.[7]

Thus, New York law governs the first step in this Court's analysis of whether Plaintiff's malpractice claims are time-barred since this Court must first consider the borrowing statute to determine the appropriate statute of limitations. In contrast, Judge Gonzalez proceeded straight to an analysis of California law to determine whether plaintiff's claims were time-barred. Plaintiff argues that this threshold difference alone is sufficient to bar the application of collateral estoppel, since the standards governing the issue in this Court are not literally "identical" to the standards which governed the issue in the District Court in California.

I am inclined to agree with plaintiff's argument, since plaintiff did not have a "full and fair opportunity" to litigate the proper application of New York's borrowing statute in the California case. *See, e.g., Sack v. Low,* 478 F.2d 360, 365 (2d Cir.1973) (holding that Massachusetts federal court order dismissing claim as time-barred under Massachusetts law did not collaterally estop plaintiff from asserting same claim in New York federal court since issue of where the claim arose for borrowing statute purposes was not decided by Massachusetts court); *see also Costello v. Pan American World Airways, Inc.,* 295 F.Supp. 1384, 1389–90 (S.D.N.Y.1969). However, I need not reject defendants' collateral estoppel argument on this basis alone, since I conclude that the New York, rather than California, statute of limitations applies to plaintiff's claims in this Court. As a result, it is clear that the statute of limitations issue in this court is significantly different from the statute of limitations issue decided by Judge Gonzalez, and therefore collateral estoppel does not bar plaintiff from asserting his claim in this Court.

█ The borrowing statute dictates that the shorter statute of limitations between California and New York should be applied to plaintiff's claim. Since California's statute of limitations is one year, Cal.Code Civ. Pro.

§ 340.6(a), and New York's either three or six years, N.Y. Civ. Prac. L. & R. §§ 214, 213,[8] California's statute of limitations would apply to this case pursuant to the borrowing statute. However, in *Stafford v. International Harvester Co.,* 668 F.2d 142 (2d Cir. 1981), the Court of Appeals held that a defendant cannot urge the application of a foreign state's shorter statute of limitations pursuant to the borrowing statute if that defendant is not subject to personal jurisdiction in the foreign state. *See also Walsh v. Maryland Bank, N.A.,* 806 F.Supp. 437, 445 (S.D.N.Y.1992); *Rescildo v. R.H. Macy's,* 187 A.D.2d 112, 594 N.Y.S.2d 139, 141 (1993). Since Judge Gonzalez determined that the defendants in the case at bar are not subject to personal jurisdiction in California, the borrowing statute is inapplicable and New York's statute of limitations applies to plaintiff's claim.

Defendants' contrary interpretation of the *Stafford* rule is meritless. Seizing on language in the *Stafford* opinion which refers to the need for a foreign state to have jurisdiction over the "cause of action", defendants argue that *Stafford* only requires the foreign state to have subject matter jurisdiction over the claim, not personal jurisdiction over the defendant. However, defendants' selective quotation of the *Stafford* opinion conveniently ignores that the Court of Appeals' decision was based on the fact that the defendant was not subject to personal jurisdiction in the foreign state. *See Stafford,* 668 F.2d at 152 ("[I]t makes no sense at all to apply the shorter limitation of a state where the defendant could not have been sued."). The language quoted by defendants is not contrary to this conclusion; it is axiomatic that a court must have jurisdiction over both the subject matter and the defendant to have jurisdiction over the cause of action.

Defendants' second attempt to distinguish *Stafford* relies on their vicarious liability. According to defendants' argument, applying the New York statute of limitations to the former partners would yield an absurd result—they would be subject to a longer stat-

---

7. Both parties agree that the cause of action accrued in California, not New York.

8. The parties dispute which time period applies to plaintiff's claims. This issue will be discussed below in greater detail.

ute of limitations than the direct participants in the alleged malpractice. However, application of the *Stafford* rule resulted in differential treatment between defendants in both *Stafford* and *Rescildo*. *See Stafford*, 668 F.2d at 154 (in action for injuries from defective tractor, only manufacturer, not repairman, dismissed); *Rescildo*, 594 N.Y.S.2d at 141 (in an action for injuries from defective belt, only distributor, not manufacturer or retailer, dismissed). In addition, vicarious liability is a valid basis for liability despite the fact that less culpable defendants may be held accountable for the actions of a direct wrongdoer. *See Caplan v. Caplan*, 268 N.Y. 445, 450, 198 N.E. 23 (1935) ("[C]ulpability should not be confused with liability....."). Accordingly, defendants' vicarious liability does not distinguish them in any significant way from the defendants in *Stafford* and *Rescildo* who remained subject to a longer statute of limitations despite the fact that the same claim against co-defendants had been dismissed as time-barred.

■ In addition, despite defendants' contentions, this differential treatment of co-defendants based on their amenability to personal jurisdiction does not encourage the forum-shopping that the borrowing statue was intended to prevent. "[T]he policy behind the borrowing statute is to protect New York resident-defendants from suits in New York that would be barred by shorter statutes of limitation *in other states where non-resident-plaintiffs could have brought suit.*" *Sack v. Low*, 478 F.2d 360, 367 (2d Cir.1973) (emphasis added). Plaintiff cannot bring suit against the defendants in California. Although he attempted to do so, the defendants successfully argued that they were not jurisdictionally present in California; accordingly, the dismissal of these defendants from the California suit was not a decision on the merits. As a result, there is nothing inappropriate about plaintiff's attempt to re-assert his claim in a court where the defendants are subject to personal jurisdiction. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n. 4 ("[U]pon ... a

dismissal [for want of personal jurisdiction], the plaintiff is free to institute the suit anew ... under circumstances supporting jurisdiction."). A plaintiff's attempt to find a viable forum does not constitute an effort to shop for the best forum. *See Stafford* 668 F.2d at 153.

Accordingly, I conclude that the New York statute of limitations applies to plaintiff's claims against the defendants. Since a significantly different standard governed Judge Gonzalez's determination that the plaintiff's claims are time-barred, collateral estoppel is not applicable here. *See, e.g., Leon v. Murphy*, 988 F.2d 303, 308–309 (2d Cir.1993) (holding that state court determination of when claim accrued did not collaterally estop plaintiff from litigating when claim accrued under different federal law standard); *Young v. United States*, 518 F.Supp. 921, 923 (S.D.N.Y.1981) (holding that prior federal court judgment that consent form was inadequate under Iowa law did not collaterally estop same defendant from litigating whether same consent form was adequate under New York law or national standard)

*B. Drexel Bankruptcy Malpractice Claim*

■ Defendants also argue that the Drexel claim is barred by collateral estoppel since the ICA settlement judgment released all claims against Drexel and plaintiff is bound by that judgment as ICA's successor-in-interest. Defendant argues that plaintiff cannot establish his Drexel malpractice claim as a result, since ICA had no claim to file against Drexel as a matter of law.[9] In response, plaintiff denies that his Drexel malpractice claim involves claims that were released against Drexel during the settlement. Rather, plaintiff argues that his claim concerns Shea & Gould's negligent failure to advise ICA as debtor-in-possession to file a fraudulent transfer claim in the Drexel bankruptcy to avoid the effect of the Drexel release. Plaintiff contends that collateral estoppel is not appropriate since this fraudulent transfer claim is different from the

---

9. Defendants also argue that plaintiff is not the beneficial owner of a claim against Drexel. However, this argument raises questions of fact

and is therefore inappropriate for resolution on a motion to dismiss.

claim released as part of the ICA settlement.

Despite plaintiff's assertions to the contrary, this "fraudulent transfer" theory has emerged for the first time in plaintiff's memorandum in opposition to defendants' motion. Plaintiff's theory is that "the release provided to Drexel was transferred for no consideration, let alone 'reasonably equivalent value,'" at a time when ICA was insolvent. Plaintiff's Main Brief at 25. But the allegations of plaintiff's complaint make no reference to the fact that Shea & Gould's negligence caused ICA to lose a "fraudulent transfer" claim against Drexel. Rather, the complaint states in pertinent part:

> 62. Hamilton, Shea & Gould, Camhy, and Hunciker knew or should have known that ICA's Settlement and the Drexel Release had been entered into for insufficient or no consideration and at a time when ICA was insolvent. Hamilton, Shea & Gould, Camhy and Hunciker knew that ICA's claims against Drexel could be preserved as assets of ICA only by filing a claim to recover all or a pro rata share of the value of the claims in the Drexel bankruptcy before the November 15, 1990 bar date. ICA failed to file a claim before the bar date.
>
> 63. Shea & Gould, Camhy, and Hunciker negligently failed to advise ICA to file a claim against the Drexel Bankruptcy Estate and to assist ICA in filing such a claim.

First Amended Compl., ¶ 62–63. Although the Federal Rules of Civil Procedure establish liberal pleading rules and only require "a short and plain statement of the claim," Fed. R.Civ.P. 8, plaintiff was required to state more than was alleged in the complaint to establish that the claim Shea & Gould negligently failed to file against the Drexel bankruptcy estate was a claim for fraudulent transfer of the Drexel release. There is no reason why the term "fraudulent transfer" could not have been used, and use of the term would have provided notice to the defendants of the nature of the claim they were required to defend.

My conclusion that this "fraudulent transfer" theory has been raised for the first time on this motion is supported by the substance of the late claim which plaintiff attempted to file in the Drexel bankruptcy. It is reasonable to assume, and in fact suggested by the plaintiff's complaint, *see* First Amended Compl., ¶¶ 63–64, that the claim which plaintiff professes Shea & Gould should have filed in the Drexel bankruptcy is the same claim which the plaintiff himself attempted to file in the Drexel bankruptcy. Yet, plaintiff's attorney submitted an affidavit in support of plaintiff's proof of claim which stated that:

> ISA/ICA had substantial involvement with Drexel in that Drexel had sold or underwritten well in excess of 55% of ISA's junk bond purchases. Based on this information I concluded that ICA had a substantial claim against Drexel and recommended to my client that we commence proceedings to enforce that claim against the Drexel estate.

Ex. A (Weiss Aff.) to Ex. 3 of Hanson Aff. Similarly, the proof of claim itself focused on Drexel's involvement in ICA's purchase of junk bonds and the resulting losses to ICA. See Ex. A. to Ex. 3 of Hanson Aff. In fact, neither the Drexel release nor a claim of fraudulent transfer were mentioned in plaintiff's proof of claim.

Clearly, plaintiff was not concerned about the fraudulent conveyance of the Drexel release at the time he filed his request to file a late claim in the Drexel bankruptcy. Accordingly, I conclude that plaintiff's "fraudulent transfer" theory has not been properly pled in this action. Claims must be asserted in pleadings, not in briefs on motions. But plaintiff's pleading alleges only that the defendants are liable for malpractice because Shea & Gould failed to advise ICA to file the same claims in the Drexel bankruptcy that were released against Drexel as part of the ICA settlement. As a result, plaintiff's first argument in opposition to the application of collateral estoppel must fail.

In the alternative, plaintiff argues that collateral estoppel is inappropriate since he, as trustee, was not in privity with pre-bankruptcy ICA. This argument has no merit. The cases plaintiff cites in support of this argument stand for the proposition that a trustee cannot be collaterally estopped from

asserting a fraudulent transfer claim on the basis of a prior court judgment against the debtor due to a lack of privity between the trustee and the pre-bankruptcy debtor. *See, e.g., In re Southern Industrial Banking Corp.*, 66 B.R. 349, 362 (Bankr.E.D.Tenn. 1986); *In re Best Pack Seafoods, Inc.*, 29 B.R. 23, 24–25 (Bankr.D.Me.1983).

However, these cases clearly distinguish a trustee's effort to avoid a fraudulent transfer from a trustee's attempt to assert a personal action on behalf of the debtor; in the latter case, privity is present. *See In re Southern Industrial Banking, Corp.*, 66 B.R. at 362 ("[A] trustee's right to avoid a preference is clearly not a personal action, such as an action for breach of a contract to which the debtor is a party. Exercising an avoidance power ... the trustee does not stand in the shoes of the debtor."); *In re Best Pack Seafoods, Inc.*, 29 B.R. at 24 ("When a trustee seeks to assert a debtor's cause of action against a third party the trustee stands in the debtor's shoes.... When seeking to avoid a preferential transfer, however, the trustee is not asserting a cause of action belonging to the debtor ...."); *see also Miller v. New York Produce Exchange*, 550 F.2d 762, 767–768 (2d Cir.), *cert. denied*, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977). In this case, plaintiff is not asserting a direct fraudulent transfer claim; plaintiff is asserting a malpractice action as ICA's successor-in-interest. Since a malpractice action is clearly a personal action of the debtor, and the trustee stands in the debtor shoes, plaintiff is barred by collateral estoppel if ICA would have been barred by collateral estoppel.

Accordingly, I conclude that plaintiff's Drexel malpractice claim, as it is currently alleged in plaintiff's complaint, fails to state a claim as a matter of law since the ICA settlement judgment released all claims against Drexel, and ICA had no claim to file against the Drexel estate. Although plaintiff may move this Court to amend his complaint to assert a Drexel malpractice claim based on the "fraudulent transfer" theory, any such motion must await the expiration of the stay discussed below.

### III. Statute of Limitations

I concluded above that the New York statute of limitations applies to plaintiff's claims. It remains to consider the effect of that statute.

Defendants argue that plaintiff's claims are time-barred, due to a recent enactment by the New York State legislature which clarifies that a three-year statute of limitations applies to legal malpractice claims, regardless of the legal theory relied upon. Plaintiff contends that this recent legislative change is not merely a clarification, but a substantive change to prior law that should not be applied retroactively to bar his claims. Accordingly, plaintiff argues that a six-year statute of limitations applies to his claims, making all of his claims timely.

There is no dispute that plaintiff's claims would be time-barred under a three year statute of limitations and timely under a six-year statute of limitations. In addition, the parties agree that a six-year statute of limitations must be used if the New York Legislature's recent enactment is not applied to plaintiff's claims. The only issue in dispute is whether this recent enactment is an amendment or a clarification, and if it is an amendment, whether it can be applied retroactively to bar plaintiff's claims.

Pursuant to CPLR § 214(6), "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice" must be commenced within three years. However, New York courts, including the New York Court of Appeals, have consistently applied the six-year statute of limitations for contract actions, CPLR § 213(2), to claims for legal malpractice, reasoning that "the choice of applicable Statute of Limitations is properly related to the remedy rather than to the theory of liability." *Santulli v. Englert, Reilly & McHugh*, 78 N.Y.2d 700, 579 N.Y.S.2d 324, 327, 586 N.E.2d 1014, 1017 (1992) (citations omitted). Accordingly, where a plaintiff's legal malpractice claim seeks recovery for damage to pecuniary or property interests, New York courts have applied a six-year, rather than three-year, statute of limitations. *See Santulli*, 579 N.Y.S.2d at 328, 586 N.E.2d 1014; *see also Barth v. Barth, Sullivan & Lancaster*, 179

A.D.2d 1049, 579 N.Y.S.2d 283 (1992) (collecting cases); *Schur v. Porter,* 712 F.Supp. 1140, 1147–1148 (S.D.N.Y.1989); *Cohen v. Goodfriend,* 665 F.Supp. 152, 159 (E.D.N.Y. 1987).

In September 1996, the New York State Legislature passed "an act to amend the civil practice law and rules, in relation to the limitation of malpractice damages actions...." 1996 N.Y. Laws 623. This act amended CPLR § 214(6), so that a three-year statute of limitations now applies to non-medical malpractice claims "regardless of whether the underlying theory is based in contract or tort." *Id.* (hereinafter referred to as "the 1996 amendment"). According to the legislative history accompanying the bill, the act was necessary to "reaffirm the legislative intent" that the statute of limitations for all non-medical malpractice actions should be three years, in light of recent court decisions which expanded the limitations period to six years under a contract theory, "thereby abrogating and circumventing the original legislative intent." New York Legislative Service, Inc., Bill Jacket, "Limitations of Malpractice Damage Action," 1996 Ch. 623. The amendment took effect immediately upon passage. 1996 N.Y. Laws 623.

▇▇▇ Pointing to the legislative history, defendants argue that the 1996 amendment is merely a clarification of existing law, which would not raise retroactivity concerns if applied to plaintiff's claims. Although the legislative history may indicate that the 1996 amendment clarifies CPLR § 214(6), I do not agree that these statements alone are determinative of the Legislature's original intent in enacting the statute, particularly since several factors indicate that no such intent existed.

For example, as early as 1977, the New York Court of Appeals held that a six-year statute of limitations applied to a non-medical malpractice claim seeking contract damages. *Sears, Roebuck & Co. v. Enco Assoc. Inc.,* 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977). In *Sears,* the Court acknowledged the existence of CPLR § 214(6), but held that the statute did not bar the application of the six-year statute of limitations to a non-medical malpractice claim arising out of

the express or implied contractual relationship of the parties. *Id.,* 401 N.Y.S.2d at 770, 372 N.E.2d at 557–558. This analysis was reaffirmed by the New York Court of Appeals, *see Video Corp. of America v. Frederick Flatto Assocs.,* 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 439, 448 N.E.2d 1350 (1983), adopted by lower courts and applied specifically to legal malpractice claims, *see, e.g., Sinopoli v. Cocozza,* 105 A.D.2d 743, 481 N.Y.S.2d 177, 178 (1984); *Santulli,* 579 N.Y.S.2d at 328, 586 N.E.2d at 1018. Accordingly, this purportedly erroneous interpretation of CPLR § 214(6) has existed unchecked for the better part of two decades, despite the fact that CPLR § 214 has been amended at least once since Sears was decided, see N.Y. Civ. Prac. L. & R. 214, Historical and Statutory Notes. It is hard to believe that the Legislature would wait so long to "clarify" the statute if the 1996 amendment truly represented its "original intent."

This conclusion is confirmed by reference to the legislative history which accompanied the original passage of CPLR § 214(6). In *Sears,* the New York Court of Appeals noted that language including contract claims within the limitation on malpractice actions was suggested, but never adopted by the Legislature:

> When CPLR 214 (subd. 6) was being drafted, it had been suggested that the limitations on malpractice actions should be extended to include contract claims (e.g., N.Y. Legis. Doc., 1961, No. 15; Advisory Committee on Practice and Procedure, Fifth Preliminary Report, § 214, subd. 6, par. 55; N.Y. Legis. Doc., 1962, No. 8; Advisory Committee on Practice and Procedure, Sixth Preliminary Report, p. 93). Express wording to this effect was never enacted, however. The recommendation of the Law Revision Commission that the statute be explicitly worded to refer to "an action to recover damages for malpractice, *whether based on tort, contract or any other theory* " (emphasis added) was never adopted by the Legislature (1962 Report of N.Y. Law Rev. Comm., pp. 232, 233).

*Sears,* 401 N.Y.S.2d at 770 n. 1, 372 N.E.2d at 558 n. 1 (emphasis in original). The language of the 1996 amendment is strikingly

similar to the language suggested, but not adopted, at the time the original CPLR § 214(6) was enacted. Given this history, it is doubtful that the 1996 amendment reflects the original intent of the Legislature or merely clarifies existing law. Rather, the 1996 amendment effectively shortened the statute of limitations for non-medical malpractice actions from six years to three.[10]

 Since I conclude that the 1996 amendment changed governing law, I must determine whether retroactive application is appropriate in the circumstances of this case. As a general rule, "statutory modifications of periods of limitation are given prospective application, governing only those causes of action that arise after the date of their enactment," unless a contrary legislative intent is clearly shown. *O'Connor v. Maine–Endwell Central School District*, 133 Misc.2d 1126, 509 N.Y.S.2d 472, 473 (Sup.Ct.1986); *see also Frontier Insurance Co. v. State of New York*, 160 Misc.2d 437, 609 N.Y.S.2d 748, 751 (Ct. Cl.1993), *aff'd*, 197 A.D.2d 177, 610 N.Y.S.2d 647 (1994); *Charbonneau v. State of New York*, 148 Misc.2d 891, 561 N.Y.S.2d 876, 878 (Ct.Cl.1990), *aff'd*, 178 A.D.2d 815, 577 N.Y.S.2d 534 (1991); *McGuirk v. City School District*, 116 A.D.2d 363, 501 N.Y.S.2d 477, 478–479 (1986).

 Defendants argue that the Legislature's intent to have the amendment apply retroactively is apparent from the fact that the amendment was to "take effect immediately." However, the fact that a Legislature indicates that a statute is to be immediately effective is not dispositive of the existence *vel non* of an intent to have the statute apply retroactively. *Compare McGuirk v. City School District*, 116 A.D.2d 363, 501 N.Y.S.2d 477, 479 (1986) (holding that statutory modification of limitations period should be given retroactive effect based on fact that statute was to take effect immediately); *Alston v. Transport Workers Union of Greater New York*, 225 A.D.2d 424, 639 N.Y.S.2d 359, 360

(1996) (same), *with Frontier Insurance Co.*, 609 N.Y.S.2d at 750 (holding that amendment was not retroactive although act stated that amendment "shall take effect immediately."); *In re Spencer's Estate*, 145 N.Y.S.2d 397, 400 (Sur.Ct.1955) ("[W]here a statute by its terms directs that it is to take effect immediately ... the idea that it is to have any retroactive operation or effect is excluded."); *see also Brown v. Ellis*, 145 Misc.2d 1085, 548 N.Y.S.2d 841, 846–847 (N.Y.Civ.Ct.1989), *aff'd*, 150 Misc.2d 375, 575 N.Y.S.2d 622 (Sup. Ct.1990) (noting disagreement among courts as to meaning of "take effect immediately."). Accordingly, the fact that the 1996 amendment was to "take effect immediately" does not, by itself, indicate that the Legislature intended the amendment to have retroactive effect.

 Where the Legislature's intent as to retroactivity is not clear from express statements in the statute or enabling legislation, a court may refer to legislative history for guidance. *See Frontier Insurance Co.*, 609 N.Y.S.2d at 751–52. Here, the legislative history clearly indicates that the 1996 amendment was intended to abrogate the six-year rule announced in *Sears, Santulli*, and like cases. However, the fact that the 1996 amendment was enacted in response to these decisions, or in an attempt to "restore" the law prior to these cases, "does not supply sufficient evidence of a clear congressional intent to overcome the presumption against statutory retroactivity." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 309, 114 S.Ct. 1510, 1517, 128 L.Ed.2d 274 (1994); *see also Frontier Insurance Co.*, 609 N.Y.S.2d at 751 ("It is not enough ... for a statute to be enacted to reverse an 'unanticipated' court decision or to address an existing wrong to make its application retroactive."). Accordingly, I conclude that there is no evidence of a clear legislative intent that the 1996 amendment should have retroactive effect.[11]

---

**10.** Defendants argue that the 1996 amendment is different in character from legislation which creates a new statute of limitations. Although the 1996 amendment did not literally enact a new limitations period, it essentially changed the appropriate statute of limitations for non-medical malpractice actions seeking contract damages.

Accordingly, the effect of the 1996 amendment is the same as if a new statute of limitations had been enacted.

**11.** There is also no evidence that this amendment will be rendered ineffectual if it is not applied

■ Even if a clear legislative intent regarding retroactivity could be discerned from this record, the amendment should not be applied to bar plaintiff's pending complaint. As a general rule, legislative enactments should not be applied retroactively if to do so would "infringe on existing, recognized rights." *Frontier Insurance Co.,* 609 N.Y.S.2d at 751. Plaintiff's claim was timely when filed pursuant to the rule announced in *Sears* and *Santulli,* but would be immediately barred if the 1996 amendment was applied retroactively. In similar situations, several courts have refused to apply the statute at issue retroactively, since the plaintiff's accrued right to his claim would be substantially impaired. *See, e.g., Reyes v. Keane,* 90 F.3d 676, 679 (2d Cir.1996) (holding that it would be "entirely unfair" to apply new time limit to petitioner's claim since the claim was filed before the effective date of the statute at issue); *Alston,* 639 N.Y.S.2d at 360 (holding that it would be unconstitutional to apply statute shortening limitations period retroactively to plaintiff's complaint since it would immediately bar the claim); *Scardina v. Wood,* 649 F.Supp. 793, 796–797 (N.D.Ohio 1986) (holding that retroactive application of statute shortening limitations period to pending claim which was timely when filed would "operate to destroy an accrued substantive right."); *see also Charbonneau,* 561 N.Y.S.2d at 879 ("A new rule should not be applied to invalidate prior, legally effective acts.").

■ In cases where a new statute of limitations has been applied retroactively, the courts have emphasized that the plaintiff had a reasonable period of time in which to file his claim prior to the effective date of the new statute. *See McGuirk,* 501 N.Y.S.2d at 479 (applying new statute of limitations ret-

roactively in part because plaintiff had a reasonable time within which to prosecute her claim after the statute's effective date); *Alston,* 225 A.D.2d 424, 639 N.Y.S.2d 359, 360 (1996); *cf. Vernon v. Cassadaga Valley Central School District,* 49 F.3d 886, 889 (2d Cir.1995) ("Retroactivity concerns ... generally do not bar the application of a changed statute of limitations to a complaint filed after the amendment."). In this case, both the conduct at issue and the filing of plaintiff's complaint occurred prior to the effective date of the 1996 amendment. Accordingly, plaintiff's claim would be immediately barred by the retroactive application of the amendment and his vested right in this malpractice claim would not only be impaired, but destroyed.[12] Given these circumstances, retroactive application of the 1996 amendment is precluded.[13]

## IV. Stay

■ Although defendants' motion to dismiss plaintiff's complaint is denied with the exception of the Drexel claim (which may be redeemed by an amended complaint), this action will be stayed until the litigation in California is completed. Defendants' liability in this case is entirely dependant on whether Camhy, Hunciker and the Shea & Gould partnership are liable for legal malpractice. Since the liability of these individuals is being adjudicated in California, where they are defendants, it would be both illogical and a waste of resources to retry the issue in this Court without the presence of the individuals directly involved. Since Durkin is the plaintiff in both cases, there is no need to be concerned about his opportunity to litigate the liability issue fully. In addition, a simultaneous trial on the merits in this Court

retroactively. *See Rivers,* 511 U.S. at 309–311, 114 S.Ct. at 1518.

12. I disagree with defendants' assertion that plaintiff did not rely on the six-year rule reaffirmed in *Santulli* in filing his claim in this Court. At the time this complaint was filed, there was valid authority for the proposition that a six-year statute of limitations applied to a legal malpractice claim seeking contract damages. Even the defendants concede this fact. Def. Reply Mem. at 18. Assuming that plaintiff's counsel would not file a complaint which was unequivocally time-barred under existing law, see Fed.R.Civ.P. 11, it

is reasonable to conclude that plaintiff relied on *Santulli* and like cases in filing his complaint.

13. Defendants also argue that the 1996 amendment is remedial and therefore should be given retroactive effect. However, even if the statute is remedial, retroactive application is improper where it would "infringe on vested rights." *Frontier Insurance Co.,* 609 N.Y.S.2d at 751; *see also Brown,* 548 N.Y.S.2d at 847; *Cady v. County of Broome,* 87 A.D.2d 964, 451 N.Y.S.2d 206, 207 (1982).

**1376**

creates a risk of inconsistent judgments. Since the litigation in California was commenced prior to the litigation in this Court and has proceeded to more advanced stage, it is appropriate that further proceedings in this Court be suspended.

However, this stay should not be read to exclude plaintiff from requesting discovery from these defendants, as third parties, if such discovery is directly related to the California action. In addition, any documents, depositions or similar matter used in the California case will not be precluded from later use in this case, should such use become necessary, by virtue of the fact that they were acquired or developed during the pendency of this stay. Any further questions on the parameters of this stay will be addressed as they arise.

### CONCLUSION

Defendants' motion to dismiss is denied, with the exception of defendants' motion to dismiss plaintiff's Drexel malpractice claim, which is granted, with leave to move to amend the complaint. However, any motion by plaintiff to amend his complaint and all further proceedings in this case are stayed pending resolution of the litigation in California.

It is SO ORDERED.