OPINION OF THE COURT
George B. Ceresia, Jr., J.
In the above two actions, which were consolidated by order dated January 10, 1995, defendant John L. Bell makes two applications to the court. First, he moves for summary judgment dismissing plaintiffs’ two complaints dated December 11, 1992 *424 (hereinafter first action) and July 28, 1994 (hereinafter second action) respectively; and in the alternative for partial summary judgment (a) dismissing plaintiffs’ second action, and (b) dismissing one or more bases of alleged malpractice supporting plaintiffs’ first action; and for partial summary judgment dismissing plaintiffs’ claims for punitive damages and lost profits. Second, he moves for an order permitting him to file a second amended answer in the first action based on the Statute of Limitations set forth in CPLR 214 (6) as amended effective September 4, 1996 (L 1996, ch 623); and for the proposed Statute of Limitations defense to be deemed an additional basis for dismissal of the first action in the summary judgment motion; and for permission to supply the court with further briefs on the Statute of Limitations as recently amended.
The first motion for summary judgment is denied as to the first action and granted as to the second action as hereinafter set forth. The second motion is denied in all respects.
Since this matter involves claims of legal malpractice, the underlying legal matter in which the plaintiffs retained the defendant must be recited. The plaintiff, White of Lake George, Inc. (hereinafter WLG),* operated a Kentucky Fried Chicken restaurant located in leased premises in a shopping center in Glens Falls, New York. Beginning in late 1983 and continuing into 1988, the defendant provided legal services for WLG in a matter involving a landlord-tenant dispute. The landlord demanded that WLG pay a pro rata share of the cost incurred in repaving the shopping center parking lot. The plaintiff David R. White (the president and majority shareholder of WLG) maintained that such costs were beyond the terms of the lease in that the work done on the parking lot was a capital improvement and the lease only required WLG to pay a share of the general maintenance charges for the shopping center. White and WLG sought the legal services of defendant John L. Bell, Esq., with whom White had an ongoing business relationship. Bell attempted to negotiate with the landlord. The landlord sent a notice dated December 28, 1983 stating that he was terminating the lease for failure to pay the parking lot charges and further that he was accelerating the entire rental for the balance of the term of the lease. Bell countered with a letter dated January 4, 1984 stating that WLG was not in default, that the parking lot work was a capital improvement for which it was not obligated under the lease, and that in view of the *425 landlord’s election to terminate the lease, he was advising his clients (the plaintiffs) to vacate the premises and to hold the landlord responsible for damages. In April 1984 the plaintiffs commenced a lawsuit against the landlord for damages in the sum of $100,000; the landlord counterclaimed seeking compensatory damages, punitive damages and accelerated rent and other charges under the lease. The landlord also asserted a claim against certain counterclaim defendants (guarantors and sureties on the lease); the counterclaim defendants cross-claimed for indemnity by White, among others. The matter was finally settled in August 1988 by the plaintiffs’ paying the landlord $150,000; payment did not occur until October 1988.
Plaintiffs’ claim in the first action herein that the defendant, as their attorney, failed to protect their rights under the lease, failed to properly advise them of their obligations under the lease, and failed to conduct the litigation properly. As a result plaintiffs claim that the defendant’s negligence was the proximate cause of their having to pay the sum of $150,000 to the landlord, of the loss of the lease and of the loss of the use of the leased premises for the balance of the term. Plaintiffs also assert a second cause of action arising out of Bell’s representation based on breach of contract.
The essence of plaintiffs’ claims is that Bell should have obtained a "Yellowstone injunction” (see, First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630) in which the status quo of a lease relationship will be maintained while the parties adjudicate an issue raised concerning the terms of the lease. Instead, plaintiffs maintain that Bell’s negligent advice and representation placed them in a position in which they were liable for accelerated rent and other charges under the lease, a sum far greater than the disputed parking lot charges.
In the second action the plaintiffs allege that Bell fraudulently concealed material facts from the plaintiffs for the purpose of inducing them to settle the landlord-tenant lawsuit. It is claimed that Bell concealed certain critical facts in order to cover up his own failures and negligence in handling the lawsuit. Plaintiffs contend that such conduct by Bell was fraudulent and violated Judiciary Law § 487. Treble damages and punitive damages are requested.
MOTION NO. 2: STATUTE OF LIMITATIONS
In September 1996 CPLR 214 (6) was amended to provide a three-year Statute of Limitations for malpractice actions (other than medical, dental or podiatric), irrespective of whether the claim was for breach of contract or tort.
*426 The defendant’s amended answer to the first complaint contains the following fifth affirmative defense: "To the extent that the plaintiffs seek damages different from or greater than those customarily recoverable under a breach of contract claim, the claims are barred by the applicable statute of limitations.” The defendant now moves for an order allowing an amendment to his second amended answer to the first complaint adding a sixth affirmative defense based on the amended Statute of Limitations, which would state: "The claims of the plaintiffs accrued more than three years prior to the commencement of the action and are therefore barred by the provisions of Civil Practice Law and Rules § 214 (6) as amended effective September 4, 1996.” Bell also requests that if the court allows the amendment of the answer, that the court also deem his summary judgment motion papers to contain the three-year Statute of Limitations defense as an additional ground for dismissal of the first complaint. He further requests leave to address the retroactive effect of the amendment of CPLR 214 (6) by additional memorandum.
The first action herein was commenced on December 11, 1992, some four years after Bell’s representation of the plaintiffs was concluded. If the proposed sixth affirmative defense is permitted to be added to the answer and the amended statute is to be given retroactive effect, then both causes of action of the first complaint would be time barred as that action was commenced more than three years after the conclusion of the attorney-client relationship. The defendant argues that the purpose of the amendment of the statute was to reassert the intention of the original statute that the Statute of Limitations for general malpractice, in this case legal malpractice, was intended to be three years regardless of whether the theory of the case was based on breach of contract or tort. This "remedial amendment” theory is unpersuasive since it has been 20 years since the Court of Appeals held that the Statute of Limitations to be applied in a professional malpractice case was determined by the remedy sought rather than the theory of liability (Sears, Roebuck & Co. v Enco Assocs., 43 NY2d 389, 394-395). Additionally, the court pointed out in Elghanian v Eaton & Van Winkle (NYLJ, June 24, 1997, at 26, cols 5, 6 [Sup Ct, NY County], citing Durkin v Shea, 957 F Supp 1360) that the initial proposed language of CPLR 214 (6) provided that the three-year limitation would apply to malpractice actions based in tort or on breach of contract; however, that language was not included by the Legislature in the final version of the statute.
*427 The plaintiffs’ position (with which the court concurs) is that to apply the statute retroactively would violate their constitutional rights to due process of law in that the statute curtails the limitations period without giving the plaintiffs time following the effective date of the amended law in which to commence their action.
If the proposed amendment is meritorious and there is no prejudice to the other party, leave to amend pleadings under CPLR 3025 (b) should be granted freely (Sharapata v Town of Islip, 82 AD2d 350, 362; State of New York v Ladd’s Gas Sta., 198 AD2d 654). In this case, however, the court determines that the proposed amendment to the defendant’s answer lacks merit because the amended statute should not be applied retroactively to cases in which the lawsuit had been commenced prior to the enactment of the amendment.
The Court of Appeals in Santulli v Englert, Reilly & McHugh (78 NY2d 700) held that the time for bringing an action for legal malpractice is six years from the date of accrual where the liability arose from an agreement retaining the attorney and the remedy sought is damages for pecuniary or property loss. "The utilitarian view under our system is that the only law we have is what the courts ultimately say we have, which in New York means that a Court of Appeals say is in every real sense the ultimate say. Hence, from the time of Santulli in 1992 until the time of the amendment of CPLR 214(6) in 1996, the law was that there was six years in which to sue on a malpractice claim against a lawyer. Any attempt to curtail the applicable time period retroactively would therefore implicate due process considerations.” (Siegel, Outside Counsel, Conflicts Over Retroactivity of 3 New Laws: Malpractice, Employers, Summary Judgment, NYLJ, Mar. 31, 1997, at 1, col 1, at 4, col 4.)
The amendment to CPLR 214 (6), setting the limitation period at three years irrespective of the theory of breach of contract or tort, states that the statute is to take effect immediately; no provisions are made for lawsuits already commenced which had relied on the case law interpretation of the former statute, nor to claims in existence at the time of amendment but not sued upon. In order to pass constitutional muster, legislation which shortens a period of limitations must include a provision for a reasonable length of time in which to commence an action under the shortened period (see, Gilbert v Ackerman, 159 NY 118; McGuirk v City School Dist., 116 AD2d 363). In this case commenced prior to the amendment to the statute, the court will not penalize litigants for following the *428 parameters established by the State’s highest Court (see, Board of Mgrs. v Mandel, 235 AD2d 382 [applying the six-year Statute of Limitations to professional malpractice action begun prior to amendment of statute]; Unadilla Silo Co. v Ernst & Young, 234 AD2d 754 [implying that the six-year Statute of Limitations would apply to a professional malpractice action commenced prior to the amendment of the statute]; Elghanian v Eaton & Van Winkle, supra [holding that the amendment to CPLR 214 (6) is prospective]; Garcia v Jonathan Director & Franklin Weinrib, Rudell & Vasallo, NYLJ, Jan. 17, 1997, at 26, col 2 [Civ Ct, NY County] [holding that the amendment was prospective with regard to actions already commenced]; cf., Russo v Waller, 171 Misc 2d 707 [holding that the amendment should be applied retroactively as it was meant to be a clarification of original intent]).
Accordingly, the defendant’s motion to amend his second amended answer is denied in all respects.

 Plaintiff White Management Corp. is the successor in interest to White of Lake George, Inc.